UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | |
|---|---|
| **Florida Harris**, <br> **Sylvester Harris, Jr.**, <br> **Fred M. Davis**, <br> **Lloyd Fuqua**, <br> **Lesley M. Thomas-Fuqua**, <br> **Sylvia M. Parker**, <br> **Jerry Reeves**, <br> **Kent W. Wellin, Jr.**, and <br> **Earl Wright** <br><br> v. <br><br> **Polk County, Texas**, <br> **Kenneth Hammack**, <br> **Michael D. Nettles**, <br> **Anthony R. Lowrie**, <br> **Howard W. Smith**, <br> **Mark L. Jones**, <br> **Christopher P. Lima**, <br> **John Doe 1**, and, <br> **John Doe 2** | Case No. 9:15-cv-14-MHS |

## MEMORANDUM OPINION ON MOTION FOR SUMMARY JUDGMENT AS TO DEFENDANTS POLK COUNTY, HAMMACK, NETTLES, SMITH, JONES, LIMA, AND JOHN DOES 1 AND 2

Before the Court is Defendants' motion for summary judgment (Doc. No. 37). The Court previously issued a preliminary order (Doc. No. 114), which **GRANTED IN PART** summary judgment in favor of Defendants Polk County, Texas, Kenneth Hammack, Michael D. Nettles, Howard W. Smith, Mark L. Jones, Christopher P. Lima, John Doe 1, and John Doe 2. The following memorandum opinion sets forth the Court's reasoning.

A separate opinion will address summary judgment as to Defendant Anthony R. Lowrie.

I. BACKGROUND

The relevant facts of this case, viewed in the light most favorable to Plaintiffs as the non-moving party, are as follows.[1]

A. Owens's Traffic Stop, Possession of Marijuana, and Affidavit by Informant Owens

On May 27, 2011, Defendant officers of the Polk County Sheriff's Office conducted a traffic stop, in which George Earl Owens was a passenger. Owens admitted that he had some marijuana in his possession. Owens stated that he received the marijuana from Plaintiff Sylvester Harris earlier that night just before leaving Florida's Kitchen in Livingston, Texas (the "restaurant"), which is owned and operated by Plaintiffs Florida and Sylvester Harris.

Defendant Lieutenant Anthony "Andy" Lowrie[2] contacted Polk County Assistant District Attorney Joe Martin and recounted Owens's tip. Lowrie also informed Martin that he bought marijuana from Owens and arrested him in 1999 or 2000, and described Owens as "slow in the head" (Doc. No. 99 at 14). But Lowrie said he found Owens to have been credible based on his previous experience. Martin instructed Lowrie to apply for a search warrant.

Owens provided a written statement to Lowrie under penalty of perjury ("Owens Affidavit," Doc. No. 37-3). In pertinent part, Owens stated:

> I have known Sylvester Harris for 20 to 25 years and I have for worked for him off and on for three years. I wash cars and clean shop for him at his cab business. I pick up trash at Florida's kitchen in the parking lot. On today's date at approximately 9:30 or 10:00 Pm I help carry vegetables into the refrigerator for Sylvester. I help carry tomatoes, cucumbers and squash into the refrigerator for Sylvester. While in the refrigerator today I saw three bundles of marijuana wrapped in clear plastic wrap. The bundles are located on the left hand side under the vegetables. The refrigerator is a large walk in cooler and it also contained prepped meat for cooking. I know what marijuana is and I know what marijuana looks like because I have been smoking marijuana on and off for about fifteen years. I have been arrested for

---

[1] But as noted in the Court's preliminary order (Doc. No. 114), the Court will assume that the facts as claimed by Defendants and supported by admissible evidence are admitted to exist without controversy because Plaintiffs failed to provide a response to Defendants' uncontested material facts.

[2] Plaintiffs erroneously refer to Defendant Anthony Lowrie as "Lowie" throughout their filings.

> delivery of marijuana in the past. I have known Sylvester has been selling marijuana for about twenty years or longer. On today's date at approximately 10:50 pm I was a passenger in my wives vehicle when we were stopped by Polk County Sheriff's Deputies. During the stop I had marijuana in my possession. I got the marijuana from Sylvester Harris tonight prior to leaving Florida's. He had the marijuana in a little metal can he keeps on him every day.

(Doc. No. 37-3 at 2, errors original). Owens signed his affidavit before Lowrie on May 27, 2011, and it was further witnessed by Polk County Precinct 4 Constable Dana Piper (nonparty) and Defendant Deputy Christopher Lima. (Doc. No. 37-3 at 3).

### B. Lowrie's Warrant Affidavit & Probable Cause Affidavit

Based on the Owens Affidavit, Defendant Lowrie prepared the "AFFIDAVIT FOR SEARCH WARRANT" ("Warrant Affidavit," Doc. No. 37-2 at 3). The Warrant Affidavit states that the restaurant is controlled by Sylvester Harris and Florida Harris. The Warrant Affidavit also states that Lowrie has probable cause based on "Exhibit A" attached and incorporated by reference ("Probable Cause Affidavit," Doc. No. 37-2 at 4). Lowrie signed the Warrant Affidavit before Judge Robert H. Trapp (then-judge of 411th District Court) on May 28, 2011. In the Probable Cause Affidavit, Lowrie states that approximately at 10:50 p.m. on May 27, 2011, officers of the Polk County Sheriff's Office conducted a traffic stop of a cooperating individual ("CI")—i.e., Owens. The CI advised that he received marijuana from Plaintiff Sylvester Harris. The CI advised that he saw the three bundles of marijuana when he helped Sylvester Harris carry vegetables into the refrigerator at the restaurant. Thus, Lowrie requested that the search warrant be issued for "Florida's Kitchen, out buildings, property and vehicles at the business at [that] time" (Doc. No. 37-2 at 4). Lowrie signed the Probable Cause Affidavit before Judge Trapp on May 28, 2011.

### C. Search Warrant Issued by Judge Trapp

On May 28, 2011, at 12:17 a.m., Judge Trapp signed a search warrant, which states that Affiant Lowrie provided "the Affidavit attached hereto did hereto this day subscribe and swear to said Affidavit before me (which said affidavit is by this reference incorporated herein for all purposes)" (Doc. No. 37-2 at 2). Judge Trapp found probable cause based on "the verified facts stated by Affiant in the Affidavit" (Doc. No. 37-2 at 2).

### D. Search & Seizure at the Restaurant

Several Defendant officers—Deputy Michael Nettles, Lieutenant Lowrie, Sergeant Howard Smith, Lieutenant Mark Jones, and Deputy Christopher Lima (collectively, "Officer Defendants")—executed the search warrant on the restaurant at or around 10:00 p.m. May 28, 2011. There is no allegation that Sheriff Kenneth Hammack was ever present at the restaurant. The search lasted several hours, during which Plaintiffs Fred Davis, Lloyd Fuqua, Lesley Thomas-Fuqua, Sylvia Parker, Jerry Reeves, Kent Wellin, Jr., and Earl Wright ("Employee Plaintiffs") were detained and searched. Plaintiffs' vehicles were also searched. Lowrie states in the search warrant return and inventory that "11 baggies containing a small amount of marijuana" were seized (Doc. No. 37-4 at 2). Plaintiff Sylvester Harris also surrendered a .22 caliber pistol, and was arrested on a charge of felon in possession of a hand gun (Doc. No. 1 at 18).[3] All other Plaintiffs were released upon completion of the search.

### E. Summary of Claims & Defenses

In Counts I and II, Plaintiffs assert their claims under 42 U.S.C. § 1983. In Count I, Plaintiffs allege that Officer Defendants violated Plaintiffs' rights under the Fourth Amendment

---

[3] The facts related to Sylvester Harris's arrest are from the Complaint, and are deemed admitted against Plaintiffs. Sylvester Harris was convicted of a felon in possession of a firearm (Doc. No. 1 at 34).

by conducting an illegal and unreasonable search and seizure of Plaintiffs' persons and property and by unlawfully arresting detaining, and imprisoning Plaintiffs (Doc. No. 1 at 34). Defendants counter that they are entitled to qualified immunity because they acted reasonably pursuant to a validly issued warrant, and, therefore, did not violate any of Plaintiffs' constitutional rights.

In Count II, Plaintiffs assert that Defendant Sheriff Hammack, " intentionally, knowingly, and/or recklessly failed to adequately instruct, train, supervise, discipline, and control" the Officer Defendants (Doc. No. 1 at 37). Hammack argues that—even if there were a constitutional violation—Plaintiffs have failed to provide any proof of a repeated pattern of misconduct, specifically and personally known and tolerated by Hammack,.

Finally, in Counts III through VI, Plaintiffs assert that Officer Defendants committed assault, battery, false imprisonment, and invasion of privacy under Texas law (Doc. No. 1 at 41–48). Defendants counter that: (1) Plaintiffs failed to state a claim for the tort claims; (2) these claims are barred under Texas law; and (3) they are entitled to official immunity.

## II. LEGAL STANDARD

### A. Summary Judgment under Rule 56

Rule 56(a) requires the issuance of summary judgment "if there is no genuine issue as to any material fact," and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 447 U.S. 317, 323 (1986). Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine dispute of material fact. *Id*. at 322. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005). A dispute is "material" if its resolution could affect the outcome of the action. *Anderson*, 477 U.S. at 248. The Court must view the evidence and draw inferences in the light most favorable to the nonmoving party. *Id.* at 255; *Tolan v. Cotton*, 134 S. Ct. 1861, 1862 (2014) (per curiam); *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005).

### B. Qualified Immunity

State actors sued in their individual capacity for money damages under 42 U.S.C. § 1983 are entitled to qualified immunity "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al–Kidd,* 563 U.S. - - -, 131 S. Ct. 2074, 2080 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Court has "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Once a defendant invokes qualified immunity, "the burden shifts to the plaintiff to demonstrate the inapplicability of the defense." *McCreary v. Richardson*, 738 F.3d 651, 655 (5th Cir. 2013) (internal citation omitted).

"A government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *al–Kidd,* 131 S. Ct. at 2083 (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987) (alterations original)). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *al–Kidd,* 131 S. Ct. at 2083. If no clearly established right has been violated, the inquiry ends there. *Linbrugger v. Abercia*, 363 F.3d 537, 540 (5th Cir. 2004). If a constitutional violation has occurred, the court must determine whether the

conduct was objectively unreasonable. *Id.* Objective reasonableness must be evaluated as of the time of the conduct in question. *See Richards v. Wisconsin*, 520 U.S. 385, 395 (1997). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1244 (2012) (quoting *al-Kidd*, 131 S. Ct. at 2085).

## III. DISCUSSION

### A. Count I Against Officer Defendants

Plaintiffs assert that Defendants are liable for unreasonable search and seizure because the search warrant was invalid. Defendants argue that the warrant is valid, or alternatively, that they are entitled to qualified immunity for a reasonable reliance on a warrant that a judge issued.

"It is well settled that if facts supporting an arrest are placed before an independent intermediary such as a magistrate, . . . the intermediary's decision breaks the chain of causation" and insulates the officers. *Taylor v. Gregg*, 36 F.3d 453, 456 (5th Cir. 1994), *overruled on other grounds by Castellano v. Fragozo*, 352 F.3d 939, 949 (5th Cir. 2003) (en banc); *see also Hand v. Gary*, 838 F.2d 1420, 1428 (5th Cir. 1988); *Murray v. Earle*, 405 F.3d 278, 291 (5th Cir. 2005). "The issuance of a warrant by a non-biased magistrate is the 'clearest indication' that officers proceeded 'in an objectively reasonable manner, or as [courts] have sometimes put it, in 'objective good faith,' but the existence of such a warrant 'does not end the inquiry into objective reasonableness.'" *United States v. Triplett*, 684 F.3d 500, 504 (5th Cir. 2012) (quoting *Messerschmidt v. Millender*, 565 U.S. - - -, 132 S. Ct. 1235, 1245 (2012). Instead, the Court must ask "whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." *Triplett*, 684 F.3d at 504 (quoting *United States v. Leon*, 468 U.S. 897, at 922 n. 23 (1984)). There is no good faith if one of four circumstances exists:

> (1) If the issuing magistrate/judge was misled by information in an affidavit that the affiant knew was false or would have known except for reckless disregard of the truth;
> (2) where the issuing magistrate/judge wholly abandoned his or her judicial role;
> (3) where the warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and
> (4) where the warrant is so facially deficient in failing to particularize the place to be searched or the things to be seized that the executing officers cannot reasonably presume it to be valid.

*Triplett*, 684 F.3d at 504 (citations omitted).[4] Here, Plaintiffs only argue the first and the third.[5]

Under the first circumstance, an officer may be liable when he "knowingly and intentionally, or with reckless disregard for the truth" makes a false statement or material omission, which results in a warrant being issued without probable cause—often referred to as "*Franks* liability". *Michalik v. Hermann*, 422 F.3d 252, 258 n.5 (5th Cir. 2005) (explaining liability under *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978))

Under the third circumstance, "an officer who initiates the procurement of a warrant is not necessarily shielded from liability merely by the issuance of a warrant." *Hamrick v. City of Eustace*, 732 F. Supp. 1390, 1396 (E.D. Tex. 1990). For officers who prepare or present the probable-cause affidavit or the warrant to the magistrate, the proper constitutional inquiry is "whether a reasonably well-trained officer in [the defendant's position] would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Michalik*, 422 F.3d at 260–61 (quoting and explaining liability under *Malley v. Briggs*, 475 U.S. 335, 344 (1986) (alterations original)).

---

[4] *Triplett* involved a suppression issue. But the "same standard of objective reasonableness that [is] applied in the context of a suppression hearing," applies when determining whether qualified immunity is to be afforded an officer's request for a warrant. *Malley v. Briggs*, 475 U.S. 335, 344 (1986).

[5] Plaintiffs' Complaint asserted numerous grounds to invalidate the search warrant that would implicate all four circumstances (Doc. No. 1 at 21–28). But in their summary-judgment response, Plaintiffs have abandoned all but the two arguments addressed in this order. Thus, Plaintiffs have waived all other invalidity grounds. *See Whitmire v. Terex Telelect, Inc.*, 390 F. Supp. 2d 540, 548 (E.D. Tex. 2005) (and citations therein).

But under the clearly established law in May 2011, the Fifth Circuit has repeatedly stated that "*Malley* liability does not extend beyond the affiant and a person 'who was fully responsible for' a warrant application." *Spencer v. Staton*, 489 F.3d 658, 663 (5th Cir. 2007) (quoting *Michalik*, 422 F.3d at 261); *see also Hampton v. Oktibbeha Cnty. Sheriff Dep't*, 480 F.3d 358, 365 (5th Cir. 2007) ("*Michalik* only extended liability to cases in which the non-affiant officer actually prepared the warrant for presentation by another."); *Jennings v. Patton*, 644 F.3d 297, 301 (5th Cir. 2011) (same). Nor can an officer who did not make any statement in the probable cause affidavit be liable under *Franks*.

Here, Plaintiffs argue that: **(1)** Defendant Lowrie—as the affiant officer applying for the search warrant—knowingly and recklessly omitted material facts regarding Owens's mental conditions from the Probable Cause Affidavit (Doc. No. 96 at 4–7); and **(2)** Lowrie's assertion that he gave oral testimony regarding Owens's reliability to supplement the Probable Cause Affidavit creates a genuine issue of material fact as to whether that testimony was under oath and what information was imparted to Judge Trapp. Thus, Plaintiffs' claims depend on whether Lowrie's application for the search warrant was objectively reasonable. There is no allegation that Sheriff Hammack or other Officer Defendants were involved in the preparation or presentation of the affidavits or the search warrant. Therefore, except for Lowrie, no other Defendant is subject to *Franks* or *Malley* liability. Nevertheless, Plaintiffs argue—without any case law support—that there is a question of material fact as to whether the actions of each of the other Officer Defendants were objectively reasonable. The Court will address each below.

**Sergeant Howard W. Smith and Deputy Michael D. Nettles**

Defendant Smith was present and had an opportunity to observe Owens during the traffic stop. Smith heard Lowrie discuss Owens's "mental health problems" with Martin (Smith Dep., Doc. No. 104). Defendant Nettles never looked at the search warrant or the Probable Cause Affidavit before his deposition (Nettles Dep., Doc. No. 108). But Nettles testified that he knows of Owens based on his 33 years of policing a small community (Doc. No. 108 at 4). Thus, Plaintiffs argue that there is a fact question as to whether a reasonable officer in Smith's and Nettles's shoes would believe that it was objectively reasonable to search the restaurant solely based on Owens's statement, who was known to be "a mental health patient and is slow in the head" (Doc. No. 96 at 9; Doc. No. 97 at 3).

But the clearly established law in May 2011 shields those like Defendant Smith and Nettles, who relied on an independent magistrate who determined that probable cause existed based on Owens's statement. *See Taylor v. Gregg*, 36 F.3d at 456; *see also Hand v. Gary*, 838 F.2d at 1428; *Murray v. Earle*, 405 F.3d at 291. Plaintiffs have not cited any authority that requires every officer executing a search warrant to independently determine probable cause himself. An officer's reliance on a magistrate-issued search warrant is the "clearest indication" that he proceeded "in an objectively reasonable manner." *Triplett*, 684 F.3d at 504. And Smith and Nettles cannot be liable because they were not personally involved in obtaining the search warrant. Furthermore, Plaintiffs have not pointed to any point during Nettles's deposition testimony where Owens's mental conditions were mentioned. All Nettles said was that he knew of Owens because Livingston is a small community. And all Smith heard was Lowrie's description of Owens as "slow in the head." Not only were Smith and Nettles not required to

second guess Judge Trapp's probable-cause determination, Plaintiffs have not pointed to any evidence that would give Smith and Nettles a reason to question the use of Owens as an informant. Therefore, Defendants Smith and Nettles are entitled to qualified immunity, and the Court **GRANTS** summary judgment in their favor.

**Lieutenant Mark L. Jones and Deputy Christopher P. Lima**

Both Jones and Lima testified that they never saw the search warrant before their depositions, and that Lowrie told them to search the vehicles outside the restaurants. (Jones Dep., Doc. No. 105; Lima Dep., Doc. No. 106).

As to Jones, Plaintiffs argue that there is a genuine issue of material fact as to whether a "reasonable police officer would believe that it is objectively reasonable that persons not named in a search warrant who are on the premises may be subject to search" (Doc. No. 96 at 10; Doc. No. 97 at 1). The search warrant in this case clearly described the suspected place and premises (i.e., the restaurant), and gave the Officer Defendants authority to search the premises (Doc. No. 37-2 at 2–3). Lowrie's Probable Cause Affidavit also said that he "is asking for a search warrant for … out buildings, property and vehicles at the business at this time" (Doc. No. 37-2 at 4). Furthermore, it is axiomatic that "[a]n officer's authority to detain incident to a search is categorical; it does not depend on the 'quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure.'" *Muehler v. Mena*, 544 U.S. 93, 98 (2005) (quoting *Michigan v. Summers*, 452 U.S. 692, 705 (1981)). This authority includes the use of handcuffs and detention for several hours. *Id.* at 100. Jones reasonably relied on the authority of the search warrant issued by Judge Trapp, and therefore is entitled to qualified immunity. Accordingly, the Court **GRANTS** summary judgment in Defendant Jones's favor.

As to Lima, Plaintiffs argues that there is a genuine issue of material fact as to whether a reasonable police officer in Lima's situation "would believe that it was objectively reasonable to believe that a facially deficit [*sic*] bare bones probable cause affidavit may be used for the issuance of a search warrant" (Doc. No. 97 at 2). Here, Lima did not present the Probable Cause Affidavit or the search warrant to Judge Trapp. Lima testified that he never saw the warrant and the Probable Cause Affidavit before his deposition (Doc. No. 106 at 2–4). All Lima did was to serve as a secondary witness on Owens's sworn statement (Doc. No. 37-3 at 2–3). Plaintiffs have not alleged that Lima was fully responsible for the warrant application or that Lima prepared the affidavits for Lowrie to present to Judge Trapp. Plaintiffs' naked assertion that there is a material factual question as to whether Lima's actions were objective reasonable based on a "facially deficit [*sic*] bare bones probable cause affidavit" is without merit. Therefore, Defendant Lima is entitled to qualified immunity, and the Court **GRANTS** summary judgment in his favor.

**B. Count II Against Sheriff Hammack for Failure to Train "Officer Defendants"**

In their summary-judgment response, Plaintiffs concede "that they have no summary judgment evidence that Defendant Sheriff Hammack participated in the conduct complained of herein and are aware that supervisors are not subject to Section 1983 liability for the acts or omissions of their subordinates" (Doc. No. 97 at 5, citing *Mouille v. City of Live Oak*, 977 F2d 924, 929(5th Cir. 1992)). But Plaintiffs argue that Hammack's failure to train Officer Defendants amounts to deliberate indifference to Plaintiffs' constitutional rights. Plaintiffs argue that Hammack should have trained his officers "that if any oral representations are to be made to a magistrate in support of a probable cause affidavit about the reliability of an informant, that it is required by law that these oral representations must be given under oath" (citing *Spencer v. Staton*, 489 F.3d at 660). Plaintiffs argue "that this is an exceptional case where a single instance

of officers' misconduct is sufficient to give rise to an inference of deliberate indifference and that genuine issue of material fact regarding this conduct by Defendant Sheriff Hammack precludes this Defendant to be entitled to qualified immunity in this action" (Doc. No. 97 at 5).

An inadequate-training claim could be the basis for § 1983 liability in "limited circumstances." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 407 (1997). To succeed on their failure to train claim, Plaintiffs must show three things: "(1) the training or hiring procedures of the municipality's policymaker were inadequate, (2) the municipality's policymaker was deliberately indifferent in adopting the … training policy, and (3) the inadequate … training policy directly caused the plaintiff's injury." *Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir. 1996); *see also*

Plaintiffs must generally demonstrate "a pattern of tortious conduct by inadequately trained employees [showing] that the lack of proper training, rather than a one-time negligent administration of the program or facts peculiar to the officer involved in a particular incident, is the 'moving force' behind the plaintiff's injury." *Bryan County*, 520 U.S. at 407–408. Only under limited circumstances, "liability can attach for a single decision not to train an individual officer even where there has been no pattern of previous constitutional violations." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 849 (5th Cir. 2009). For a single-incidence claim, "the evidence must withstand a vigorous test whether a reasonable jury could conclude: ***first***, it should have been obvious to [the policymaker] that the highly predictable consequence of not training … was that [subordinate officer] would apply force in such a way that the Fourth Amendment rights of the citizens … were at risk; and, ***second***, that this failure to train or to provide supervision was 'the moving force' that had a specific causal connection to the constitutional injury." *Brown v. Bryan Cnty., Okla.*, 219 F.3d 450, 461 (5th Cir. 2000)). "In

short, the evidence must establish, under the stringent standards of the Supreme Court's pronouncements in *Bryan County* [520 U.S. at 404–08], unmistakable culpability and clearly connected causation." *Id.*

Besides the naked assertion "that this is an exceptional case where a single instance of officers' misconduct is sufficient to give rise to an inference of deliberate indifference" (Doc. No. 97 at 5), Plaintiffs offer no argument (or any evidence in support) as to why this case falls under the very narrow exception under *Bryan County*. Plaintiffs have not "affirmatively linked" the failure to train as the "moving force behind" a constitutional violation. *See Fraire v. City of Arlington*, 957 F.2d 1268, 1281 (5th Cir. 1992). Accordingly, Defendant Hammack is entitled to qualified immunity. And as the County correctly argues, it did not have an unconstitutional policy or custom. The Court **GRANTS** summary judgment in favor of Defendants Hammack and Polk County.

### C. Counts III through VI – Tort Claims Under Texas Law

Plaintiffs argue that Officer Defendants "had to touch each one of the Plaintiffs in order to search each Plaintiff and that this unconsented touch [is] sufficient for Plaintiffs' state law claim" of assault and battery (Doc. No. 97 at 6). Plaintiffs also argue that because Officer Defendants did not allow them to leave, "this was in fact a willful detention without consent and without justification which is sufficient for Plaintiffs' state law tort claim for false imprisonment as well as invasion of privacy" (Doc. No. 97 at 6).

Defendants argue that Plaintiffs failed to state a claim for these tort claims. Even assuming *arguendo* that Plaintiffs have stated valid state law claims, Defendants argue those claims are barred under *Franka v. Velasquez*, 332 S.W.3d 367, 369-85 (Tex. 2011) and the Texas

Tort Claims Act. Finally, Defendants argue that they are entitled to official immunity under Texas law. The Court will address the official immunity issue first.

A Texas government employee is entitled to official immunity for "(1) the performance of discretionary duties (2) that are within the scope of the employee's authority, (3) provided that the employee acts in good faith." *Ramirez v. Martinez*, 716 F.3d 369, 379–80 (5th Cir. 2013) (quoting *Telthorster v. Tennell*, 92 S.W.3d 457, 460–61 (Tex. 2002)). The officer must "conclusively establish" each of these elements in order to be entitled to summary judgment on the basis of official immunity. *Id.* at 381.

"Texas law of official immunity is substantially the same as federal qualified immunity." *Crostley v. Lamar Cnty., Texas*, 717 F.3d 410, 424 (5th Cir. 2013) (quoting *Wren v. Towe*, 130 F.3d 1154, 1160 (5th Cir. 1997)); *see also City of Lancaster*, 883 S.W.2d at 656. Here, Officer Defendants were clearly performing discretionary duties within the scope of their authority. *City of Robstown v. Ramirez*, 17 S.W.3d 268, 271–72 (Tex. App.—Corpus Christi 2000, pet. dism'd w.o.j.) (holding that obtaining and executing a search warrant for investigation crimes are considered discretionary duties of a peace officer's authority under Texas law). Good faith is evaluated under an objective legal reasonableness test, disregarding the officer's subjective state of mind. *See Wadewitz v. Montgomery*, 951 S.W.2d 464, 466 (Tex. 1997); *City of Lancaster*, 883 S.W.2d at 656.

Here, Officer Defendants—Smith, Nettles, Jones, and Lima—have demonstrated that they reasonably executed a search warrant issued by Judge Trapp. Having found above that Officer Defendants were not objectively unreasonable in relying on an issued warrant, the same applies for the official immunity good-faith analysis. Thus, the burden shifts to Plaintiffs to show that "no reasonable person" in the Officer Defendants' position could have thought the facts

were such that they justified Defendants' acts. *City of Lancaster*, 883 S.W.2d at 657. The only argument Plaintiffs provided is:

> Plaintiffs contend that they have shown herein that Defendant police officers did not act in good faith and that the search warrant in question was invalid .Thus, Defendant police officers are not entitled to official immunity.

(Doc. No. 97 at 7.) Besides this naked conclusion, Plaintiffs have not produced evidence that demonstrates that no reasonable officer would have searched the restaurant premises, vehicles, and Plaintiffs pursuant to a search warrant issued by a neutral magistrate. The nonmovant's failure "to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

Accordingly, the Court **GRANTS** summary judgment in favor of all Defendants[6] as to Counts III through VI of Plaintiffs' Complaint.

## IV.   CONCLUSIONS

Plaintiffs have failed to raise a genuine dispute as to any material fact regarding their Fourth Amendment claim that Officer Defendants—Smith, Nettles, Jones, and Lima—violated their rights. Plaintiffs have also failed to affirmatively linked Sheriff Hammack's alleged failure to train Officer Defendants as the moving force behind the alleged constitutional violation. Nor have Plaintiffs offer any proof that Hammack was deliberately indifferent to a pattern of tortious conduct by inadequately trained Officer Defendants. And Plaintiffs also have not pointed to any unconstitutional policy of Polk County. Finally, Plaintiffs have not overcome Defendants' assertion of official immunity as to the state tort claims.

---

[6] As to Hammack, it is uncontested that he was not personally involved in the search and seizure. It is also uncontested that Lowrie did not have any personal contact with Plaintiffs' persons or vehicles (*see* Doc. No. 38-1 at 6).

Accordingly, it is **ORDERED** that summary judgment be **GRANTED** in favor Defendants Polk County, Hammack, Smith, Nettles, Jones, Lima, John Doe 1, and John Doe 2 and as to all claims asserted by Plaintiffs. It is **further ORDERED** that Smith, Nettles, Jones, Lima, Hammack, and Polk County be **DISMISSED** with prejudice from this suit.[7]

**It is SO ORDERED.**
**SIGNED this 31st day of March, 2015.**

_____
MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE

---

[7] Even though Plaintiffs listed Officers "John Doe 1 and John Doe 2" as Defendants, Plaintiffs have not produced any evidence that any other officers were liable for constitutional violation. Indeed, Plaintiffs' summary-judgment response is silent as to any claims against the John Doe officers.